RONALD M. AND MARCELLA E. ABRAHAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abraham v. Commissioner
Docket No. 18759-87.
United States Tax Court
T.C. Memo 1988-412; 1988 Tax Ct. Memo LEXIS 444; 56 T.C.M. (CCH) 27; T.C.M. (RIA) 88412; September 1, 1988. Ronald M. Abraham, pro se. Donna F. Herbert, for the respondent. GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case [1] was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1986, and Rule 180 et seq. [2]
Respondent determined deficiencies in petitioner's Federal income tax for the taxable years 1983 and 1984 in the amounts of $ 1,117.35 and $ 1,109.42, respectively. After concessions by the parties, the only issue remaining *446 for decision is whether payments petitioner Ronald M. Abraham received from two multi-level marketing companies are subject to self-employment tax. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Kent, Washington when they filed their petition. They timely filed their 1983 and 1984 joint Federal income tax returns. In addition to his insurance adjuster's business, Ronald M. Abraham (petitioner) operated a business known as Abraham & Associates. Through this business petitioner sold health foods and products for two multi-level marketing companies, International Health Advocates, Inc. and Universal Nutrition, Inc. Both of these companies sold essentially the same products and operated under a similar system. Petitioner recruited distributors for the products offered through these companies and also sold products to customers who were not interested in becoming distributors. Petitioner became involved with these companies because of his enthusiasm for GH3 or Gerovital, a product used in the treatment of arthritis. He became so involved in the promotion of *447 this product that he developed pamphlets and tapes which were not available through the companies themselves. Petitioner disseminated this information to his recruits, and trained these individuals to be distributors. On occasion, petitioner conducted lectures for the distributors at his home. The distributors petitioner recruited were considered first level distributors. The first level distributors also recruited individuals who, with reference to petitioner, became second level distributors. This system of recruiting distributors continued until there were four levels of distributors beneath petitioner. Petitioner was paid a "bonus" or "commission" [3] on sales he made to customers and also on sales made by the four levels of distributors. The commission structure of the companies was such that if petitioner had four or fewer distributors at the first level, he received a 10 percent commission on purchases made by the first level distributors. If he had five first level distributors, petitioner received 15 percent of the purchases made by first level distributors, as well as 5 percent of the purchases made by second level distributors (individuals recruited by first level distributors). *448 When one of petitioner's first level distributors recruited five second level distributors, a "breakaway group" was formed. Petitioner's commission on purchases made by this second level beakaway group was reduced to 3 percent. [4] When a distributor from a second level breakaway group recruited five distributors, a third level breakaway group was formed. Petitioner's commission on purchases made by this third level breakaway group was 2 percent. When a distributor from a third level breakaway group recruited five distributors, a fourth level breakaway group was formed. Petitioner received a 1 percent commission on purchases made by the fourth level breakaway group. *449 In 1983, petitioner received a total of $ 11,007 in commissions from International Health Advocates, Inc. In 1984, he received a total of $ 12,573 in commissions from International Health Advocates, Inc., and $ 5,027 in commissions from Universal Nutrition, Inc. Petitioner reported these amounts as dividends on Schedule B attached to his 1983 and 1984 joint Federal income tax returns. He did not report these amounts as income on the Schedules C he had prepared for Abraham & Associates. Respondent contends that the payments petitioner received from these companies was self-employment income subject to self-employment tax under section 1401. Petitioner does not deny that he was self-employed in the years at issue. Indeed, he concedes that the amounts representing commissions from first level distributors are subject to self-employment tax. [5] Petitioner contends, however, that the remainder of the payments were not "earnings from self-employment" and therefore not subject to self-employment tax. Section *450 1401 imposes a tax on an individual's "self-employment income." Self-employment income is defined generally as "net earnings from self-employment." Sec. 1402(b). The term net earnings from self-employment means gross income derived by an individual from any "trade or business" carried on by such individual, less certain deductions. Sec. 1402(a); sec. 1.1402(a)-1, Income Tax Regs. The exceptions applicable to the computation of net earnings from self-employment tax found in section 1402(a) do not apply here. Realizing that his income was dependent on the sales activities of his distributors, petitioner devoted substantial time and energy to training and developing these individuals. He provided them with motivation and encouragement, he imparted on them his skills, knowledge and experience with the products, and he counseled them on selecting successful recruits. Petitioner developed promotional pamphlets, conducted lectures at his home for his distributors and encouraged his distributors to bring their recruits to these lectures. All of these activities were conducted in an attempt to increase the productivity of the distributors at all levels. It makes no difference that petitioner *451 had little, if any personal contact with distributors at the second, third, and fourth levels. He devoted his time with the expectation that well-trained first level distributors would develop successful second level distributors, who in turn were likely to recruit productive third level distributors. Successful distributors at the various levels meant petitioner could expect income from their sales. In consideration of the above facts, we find that the payments petitioner received were sales commissions which he earned from self-employment. Such commissions are self-employment income subject to self-employment tax. Accordingly, respondent is sustained on this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. This case was filed originally as a small tax case as provided for in section 7463 of the Internal Revenue Code of 1954↩. At trial, petitioners orally moved the Court to remove the case from the small case category. The Court granted petitioners' motion by Order dated February 8, 1988. 2. Hereinafter, all section references are to the Internal Revenue Code of 1954, as in effect in the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. The companies used the words "bonus" and "commission" on computer printouts which reflected payments made to petitioner by the companies. We use these words in describing the payments without accepting the categorizations in a legal context. ↩
4. The two companies had different commission structures at this level. While International Health Advocates reduced commissions on the second level breakaway group to 3 percent, it continued to pay a 15 percent commission on purchases made by the five first level distributors. Universal Nutrition, Inc. paid an 8 percent commission on the second level breakaway group, but reduced commissions on purchases by the five first level distributors to 8 percent. ↩
5. In 1983 petitioner received $ 4,545.99 in commissions from first level distributors. In 1984 petitioner received $ 3,014.70 in commissions from first level distributors. ↩